IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

JASON VORSE,

Defendant.

4:25CR3035

MEMORANDUM AND ORDER

This matter is before the Court on the Government's Statement of Objections (Filing No. 41) to the Magistrate Judge's Findings and Recommendation dated January 2, 2026 (Filing No. 38). For the reasons explained below, the Government's objections to the Findings and Recommendation will be overruled.

**BACKGROUND**

Defendant is charged with possession of child pornography in violation of 15 U.S.C. § 2252(a)(4)(B). (Filing No. 1.) The charges result from the discovery of child pornography on Defendant's phone.[1]  On October 28, 2024, two investigators visited Defendant's house to verify information on Defendant's sex offender registration.  One of the investigators, Matthew Dodge ("Investigator Dodge") of the Scotts Bluff County Sheriff's Office, approached Defendant who was sitting near a table inside his detached garage with the garage door open.  Investigator Dodge was dressed in plain clothes, with a body camera on his belt.  (Filing No. 37; Ex. 101.) As

---

[1] For purposes of brevity, all facts surrounding this incident will not be recited in this Memorandum and Order as they were thoroughly set out in the Magistrate Judge's Findings and Recommendation.  However, facts relevant to resolving the Government's objections will be discussed.

Investigator Dodge approached the garage, he said, "Knock, knock," and stopped walking just outside the garage. (Ex. 101.) Investigator Dodge explained to Defendant that he was there for Defendant's registration. (Ex. 101.) Defendant got up and walked towards Investigator Dodge. (Ex. 101.)

Although difficult to see from the video of the encounter—because the camera was partially obscured—it appears from the movement of the camera footage and audio of the recording, that as Defendant stood up and walked towards Investigation Dodge, Investigator Dodge stepped into the garage. (Ex. 101.) The recording shows that after Defendant stopped walking forward, Investigator Dodge and Defendant were standing close together, separated by only a couple feet. (Ex. 101.) Investigator Dodge then asked Defendant, "What did you put up, over here?," to which Defendant replied, "I was just putting some stuff away." (Ex. 101.). Investigator Dodge said, "Just putting some stuff away? Okay. Let's go take a look."[2] (Ex. 101.) After he said that, Investigator Dodge immediately began walking towards the back of the garage. (Ex. 101.) As Investigator Dodge moved forward, the video footage briefly shows Defendant's back, slightly in front of Investigator Dodge. (Ex. 101.) The garage is a small space, so it only took a couple steps for Investigator Dodge and Defendant to get to the area where Defendant had been sitting when Investigator Dodge arrived. (Filing No. 37; Ex. 101.)

When they got to that area, Defendant showed Investigator Dodge a vape inside a container. (Filing No. 37; Ex. 109.) The container also contained a methamphetamine pipe. (Filing No. 37; Ex. 109.) At that point, Investigator Dodge decided to arrest Defendant, and asked Defendant to step outside. (Filing No. 37; Ex. 101.) Defendant responded, "No, I'm not going to step out here for you." (Ex. 101.) Defendant continued to object but eventually left the garage with Investigator Dodge. (Ex. 101.)

Defendant was patted down, walked to the investigators' unmarked truck, and handcuffed. (Filing No. 37; Ex. 101.) Although not audible from the recording, Defendant asked Investigator

---

[2] As will be discussed below, Investigator Dodge submitted an affidavit in support of a search warrant to search Defendant's phone. (Ex. 5.) The affidavit was not offered at the evidentiary hearing before the Magistrate Judge but was later provided to this Court after the Government moved to reopen the record. (Filing No. 43; Filing No. 44.) In the affidavit, Investigator Dodge acknowledges that he entered the garage *before* he told Defendant "Let's go take a look." (Ex. 5.) The affidavit states: "Your affiant then entered the garage and asked [Defendant] what he just threw. [Defendant] told your affiant he was just putting something away. Your affiant then said to [Defendant], "Let's go take a look." (Ex. 5.)

Dodge to retrieve his phone. (Filing No. 37; Ex. 101.) Investigator Dodge agreed and went back inside the garage to get it. (Filing No. 37; Ex. 101.) Once inside, Investigator Dodge saw marijuana and what appeared to be a gun.[3] (Filing No. 37; Ex. 101.) Investigator Dodge also observed Defendant's phone on the table in front of where Defendant had been sitting. (Filing No. 37; Ex. 101.) The phone was unlocked and open with various thumbnails displaying what appeared to be child pornography. (Filing No. 37; Ex. 101.) Investigator Dodge did not seize Defendant's phone at that time. Instead, Investigator Dodge obtained a warrant for Defendant's house, including his garage, and seized Defendant's phone. (Filing No. 22-1.) Another warrant was obtained to search Defendant's phone and child pornography was discovered on it—which resulted in the pending charges. (Ex. 5.)

Defendant was charged in state court with three drug charges arising out of the events that occurred on October 28, 2024. (Filing No. 26-4.) In exchange for the State dismissing two of the counts, Defendant agreed to plead no contest to one count of attempted possession of methamphetamine. (Filing No. 26-4.) Defendant pled no contest to the charge and was found guilty by the state court on April 16, 2025. (Filing No. 26-4.) Defendant did not challenge the constitutionality of the search in state court, and there is no indication that Defendant was advised during the proceedings that he was waiving his right to challenge the constitutionality of the search in a federal case. On April 21, 2025, Defendant was indicted in this federal case on the child pornography charge. (Filing No. 1.)

Defendant has moved to suppress the evidence of child pornography found on his phone, arguing that investigators entered his garage without his consent. (Filing No. 20.) Following an evidentiary hearing, the Magistrate Judge issued a Findings and Recommendation, recommending that Defendant's motion be granted. (Filing No. 38.) The Magistrate Judge concluded that (1) Defendant is not estopped from challenging the constitutionality of the search; (2) Defendant did not explicitly or impliedly consent to Investigator Dodge's entry into his garage; (3) Defendant's request that Investigator Dodge retrieve his phone from the garage was not sufficiently attenuated from the constitutional violation; and (4) the *Leon* good-faith exception did not apply. (Filing No. 38.) The Government objects to each of these findings. (Filing No. 41.)

---

[3] It was later learned that the gun was not real. (Filing No. 37.)

3

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 636(b)(1), when a party objects to a proposed findings of fact and recommendation by a magistrate judge, the Court must "make a de novo determination of those portions . . . to which objection is made." *Id. See also Gonzales-Perez v. Harper*, 241 F.3d 633, 636 (8th Cir. 2001) ("When a party timely objects to a magistrate judge's report and recommendation, the district court is required to make a de novo review of the record related to the objections . . ."). The reviewing district court judge is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see* Fed. R. Crim. P. 59(b)(3). If desired, a reviewing district court judge may also "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

When a party contests a magistrate judge's findings that resulted from an evidentiary hearing, the reviewing district court judge does not need to conduct another hearing. *See United States v. Raddatz*, 447 U.S. 667, 674 (1980) (holding that 28 U.S.C. § 636 "calls for a de novo determination, not a de novo hearing"). Instead, the district court discharges its duty by, at a minimum, listening to a tape recording or reading a transcript of the evidentiary hearing. *See United States v. Azure*, 539 F.3d 904, 910–11 (8th Cir. 2008). Here, the Court has read the transcript of the hearing and has reviewed the exhibits. The Court has also reviewed all briefing submitted by the parties. Having done so, the Court finds that the Government's objections should be overruled.

**DISCUSSION**

**1. Waiver**

The Government claims that the Magistrate Judge incorrectly found that Defendant did not waive his right to challenge the constitutionality of the search when he pled no contest to the state drug charge. The Government points out the well-established rule that "a defendant who pleads guilty waives all nonjurisdictional defenses." *United States v. Arrellano*, 213 F.3d 427, 430 (8th Cir. 2000) (quotation omitted). This rule typically arises in the context of direct appeals following guilty pleas. However, using this proposition of law, the Government argues that because Defendant pled no contest to a state court drug charge arising out of the same search without

challenging the constitutionality of the search, he waived the right to challenge the constitutionality of the search in this federal case.

The parties have not directed the Court to any authority from the Eighth Circuit addressing this issue, nor could the Court find any. However, this question has been considered by the Second and Tenth Circuits. Each of these Circuits concluded that a defendant does not waive the ability to challenge the constitutionality of a search in federal court by pleading to charges in state court arising out of the same search. *United States v. Gregg*, 463 F.3d 160, 165-66 (2d Cir. 2006) (finding that the defendant's plea to a state charge of criminal impersonation did not waive Fourth Amendment challenge in subsequent federal felon-in-possession charge arising from the same stop and arrest because the legality of the firearm seizure was not at issue when the defendant pled guilty in state court); *United States v. Farmer*, 770 F.3d 1363, 1367 (10th Cir. 2014) (ruling that the defendant's guilty plea in state court did not waive his Fourth Amendment right to challenge the validity of the underlying search in a subsequent federal prosecution). *See also United States v. Williams*, No. 19-204, 2025 WL 487490 (E.D. La. Feb. 13, 2025) (rejecting the government's waiver argument, stating that the defendants' "guilty pleas established their factual guilt as to those state charges, but they did not waive their rights to raise Fourth Amendment challenges to the introduction of the evidence collected in connection with those charges in other contexts"). Like the Magistrate Judge, the Court finds the reasoning of these cases persuasive and in keeping with the United States Supreme Court's holding in *Haring v. Prosise*, 462 U.S. 306 (1983). In *Haring*, the Supreme Court held that a guilty plea in state criminal proceeding did not prevent the defendant from challenging the legality of the search underlying the state conviction in a subsequent action brought pursuant to 42 U.S.C. § 1983. The Supreme Court applied the doctrine of collateral estoppel to determine the effect of the guilty plea. *Id*. at 312.

Based on this authority, the Court finds that Defendant did not waive his right to raise a Fourth Amendment challenge to the admissibility of the evidence by pleading no contest to a state drug charge. The doctrine of collateral estoppel (referred to in Nebraska as issue preclusion) applies to resolve this issue. "Issue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate." *Hara v. Reichert*, 287 Neb. 577, 580, 843 N.W.2d 812, 816 (2014). Here, the constitutionality of the search was not litigated or considered by the state court. At the time Defendant pled guilty, he had not even been indicted on

5

the child pornography charge. The state court only accepted Defendant's plea to a misdemeanor charge of attempted possession of methamphetamine and then found him guilty based on that plea. Therefore, Defendant is not precluded from challenging the constitutionality of the search and the Government's objection to the Magistrate Judge's conclusion in this regard is overruled.

### 2. Consent to Search

The parties dispute whether Investigator Dodge's entry into the garage without a warrant was lawful. "[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (quotation omitted). The law is well-established that "[a]bsent consent or exigent circumstances, a private home may not be entered to conduct a search . . . without a warrant." *United States v. Faler*, 832 F.3d 849, 853 (8th Cir. 2016) (quotation omitted).  The Government does not contend that exigent circumstances justified the search, but rather that Defendant consented to Investigator Dodge's entry into the garage.[4]

"An individual may validly consent to an otherwise impermissible search if, in the totality of the circumstances, consent is freely and voluntarily given, and not the product of implicit or explicit coercion." *United States v. Rambo*, 789 F.2d 1289, 1296 (8th Cir. 1986). "Voluntary consent may be express or implied." *United States v. Lakoskey*, 462 F.3d 965, 973 (8th Cir. 2006). "Consent may be inferred from the defendant's words, gestures, or other conduct, and the ultimate inquiry is not whether the defendant subjectively consented, but whether a reasonable officer would believe consent was given." *United States v. Rodriguez*, 834 F.3d 937, 940 (8th Cir. 2016) (internal quotation omitted).  The Government has the burden to show that consent was voluntary by a preponderance of the evidence.  *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990).

In this case, there is no question that Defendant did not provide express consent for Investigator Dodge to enter the garage.  The question is whether implied consent existed under the facts of this case.  The Government argues that Defendant impliedly consented because he was sitting with his garage door open and he turned and led Investigator Dodge into the garage.  The Eighth Circuit has determined that officers can reasonably imply consent to enter when an

---

[4] The protection afforded to a home also extends to the curtilage of the home.  *See United States v. Meidel*, 764 F.3d 844, 847 (8th Cir. 2014). The Government does not contest Defendant's assertion that the garage was within the curtilage of Defendant's home.  (Filing No. 42 at CM/ECF. p. 5.)

individual steps back from a door.  *See Faler*, 832 F.3d at 852-53 (finding implied consent where the individual stepped aside so that officers could enter an apartment); *United States v. Greer*, 607 F.3d 559, 563 (8th Cir. 2010) (finding that when the defendant opened the door and stepped back, he impliedly invited the officers to enter); *United States v. Turbyfill*, 525 F.2d 57, 59 (8th Cir. 1975) ("[T]he action of [an individual] in the opening of the door and stepping back constituted an implied invitation to enter.").

The problem with the Government's argument, however, is that the evidence shows Investigator Dodge entered the garage *before* Defendant reached the threshold of the garage door to meet him and *before* Investigator Dodge said, "Let's go take a look." (Ex. 5.)  Investigator Dodge admitted that he entered the garage before making this statement in the affidavit he prepared to support issuance of the search warrant for Defendant's phone. (Ex. 5.) Also, the video and audio recording of the encounter indicate that Investigator Dodge stepped inside the garage before Defendant reached the threshold of the garage door to meet him. Therefore, Defendant's act of turning around cannot reasonably be interpreted as consent for Investigator Dodge to enter the garage, given that Investigator Dodge was already in the garage at that point.

Moreover, Investigator Dodge's comment, Let's go take a look," was a directive, not a question. *See United States v. Conner*, 127 F.3d 663, 666 (8th Cir. 1997) (finding that "an unconstitutional search occurs when officers gain visual or physical access to a motel room after an occupant opens the door not voluntarily, but in response to a demand under color of authority"). Although Defendant turned around after Investigator Dodge made this statement, the small amount of physical space between the two of them, coupled with speed at which things were unfolding, did not afford Defendant any time to object. Defendant's act of turning around in response to Investigator Dodge's command and then walking a couple steps to the rear of the garage—when Investigator Dodge was already in the garage—cannot reasonably be construed as an invitation for Investigator Dodge to move even further into the garage.  *See Roybal v. City of Albuquerque*, No. CIV 08-0181, 2009 WL 1329834 (D. N.M. Apr. 28, 2009) (finding that officers did not have implied consent to enter garage because by the time the garage owners could have objected, the officers had already entered the garage, and that the owners' speaking with the officers was not a sign of consent); *United States v. Hatcher*, 441 F. Supp.3d 723 (N.D. Iowa 2020) (finding no implied consent where the officer said "Let's step inside," to the defendant's girlfriend and she did

7

not have time to object before officers entered the home). Here, considering the totality of the circumstances, the Court finds that Defendant did not give implied consent for Investigator Dodge to enter the garage, or to then move even further into the garage once he was already inside.

The Court acknowledges that Investigator Dodge did not threaten Defendant to obtain further entry into the garage, and that Defendant was not intoxicated and did not lack the mental ability to deny consent.[5] Also, Defendant was familiar with the protections of the legal system and he seemingly knew he had the right to deny consent—as evidenced by his objection to leaving the garage and being placed under arrest. However, the bottom line is that Defendant did not consent, voluntarily or otherwise. Because the Government has not met its burden to show that Investigator Dodge had consent to enter the garage or to then advance further into the garage, its objection to the Magistrate Judge's Findings and Recommendation on this ground will be overruled.

### 3. Retrieval of Phone

"Evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule and, therefore, cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011) (quotation omitted). "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree." *Segura v. United States,* 468 U.S. 796 (1984) (citations omitted).

"When an illegal entry precedes a defendant's grant of consent to search, the Government must show (1) that the defendant's consent was voluntary and (2) that the consent was an independent act of the defendant's free will that purged the taint of the Fourth Amendment violation." *United States v. Whisenton*, 765 F.3d 938, 941 (8th Cir. 2014) (quotation omitted). In determining whether consent purged the taint of the illegal entry, courts consider "(1) the giving of *Miranda* warnings, (2) the temporal proximity of the illegal entry and the alleged consent, (3)

---

[5] In determining whether consent is voluntary, courts consider (1) the individual's age and mental ability; (2) whether the individual was under the influence; (3) whether the individual was *Mirandized*; and (4) whether the individual was aware, through prior experience, of the protections that the legal system. *United States v. Golinveaxu*, 611 F.3d 956, 959 (8th Cir. 2010). Additional considerations include (1) the length of the detention; (2) whether the police used threats or intimidation; (3) whether police made promises or misrepresentations; (4) whether the individual was in custody or under arrest when consent was provided; (5) whether the consent was given in public or secluded location; and (6) whether the individual stood by silently or objected to the search. *Id*.

the presence of intervening circumstances, and (4) the purpose and flagrancy of the official misconduct." *Lakoskey*, 462 F.3d at 975 (quotation omitted).

The Court agrees with the Government that Investigator Dodge's entry into the garage to retrieve Defendant's phone was not a search. Still, Defendant's request for his phone does not necessarily render the unconstitutional act forgiven and the evidence on his phone admissible. After Investigator Dodge discovered the methamphetamine pipe in the garage, he placed Defendant under arrest. Defendant was patted down, walked to the investigators' truck, and handcuffed. Then, approximately six minutes into the encounter, Investigator Dodge went to retrieve Defendant's phone from the garage, per Defendant's request. (Ex. 101.)

The temporal proximity between the illegal entry, the discovery of the drug evidence, and then Investigator Dodge's retrieval of Defendant's phone from the garage is very short. Also, Defendant was not *Mirandized* (Filing No. 37), and there were no intervening circumstances between the illegal entry and the second entry into the garage to retrieve the phone. It is true that Investigator Dodge did not retrieve the phone for an investigatory purpose and later applied for a warrant to search the area. However, if it were not for the initial illegal entry, Defendant would not have been arrested and would not have asked Investigator Dodge to retrieve his phone. The evidence found on the phone is clearly derivative of the initial illegal entry. Therefore, the Government's objection to the Magistrate Judge's ruling in this regard will be overruled.

### 4. Leon Good Faith Exception

The Government maintains that the *Leon* good faith exception to the exclusionary rule applies because investigators obtained a search warrant before removing anything from the garage. *See United States v. Leon*, 468 U.S. 897, 920, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Under *Leon*, "evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). "For the *Leon* exception to apply when the warrant is based on evidence obtained through a Fourth Amendment violation, the [officers'] prewarrant conduct must have been close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable." *United States v. Cannon*, 703

F.3d 407, 413 (8th Cir. 2013)) (quotation omitted). "If the officers' prewarrant conduct is 'clearly illegal,' however, the good-faith exception does not apply." *Rodriguez*, 834 F.3d at 941.

Investigator Dodge's affidavit shows that he could not have had a reasonable, good faith belief that Defendant impliedly consented to the search. Investigator Dodge acknowledged in his affidavit that he entered the garage before telling Defendant "Let's go take a look." (Ex. 5.) This affidavit, taken together with the body camera footage, shows that Investigator Dodge's prewarrant conduct was not close enough to the line of validity to make his belief in the validity of the warrant objectively reasonable. As discussed previously, the events as they unfolded, could not be reasonably interpreted as an invitation for Investigator Dodge to enter. Therefore, the Government's objection to the Magistrate Judge's conclusion regarding the applicability of *Leon* will be overruled.

Accordingly,

**IT IS ORDERED:**

1. The Government's Statement of Objections to Magistrate Judge's Order (Filing No. 41) is overruled.
2. The Magistrate Judge's Findings and Recommendation (Filing No. 38) is adopted.
3. Defendant's Motion to Suppress (Filing No. 20) is granted.
4. This matter will be set for trial by separate order.

Dated this 19th day of March, 2026.

BY THE COURT:

Susan M. Bazis
United States District Judge

10